# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN SCOTT VARNER,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2016

No. 324705
Berrien Circuit Court
LC No. 2014-002388-FH

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Defendant, Kevin Scott Varner, appeals as of right his convictions, following a jury trial, of unlawful possession of controlled substances with the intent to deliver, MCL 333.7401(2)(a)(iv) (less than 50 grams), and resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced Varner to serve 84 to 240 months' imprisonment for possession with intent to deliver and 36 to 180 months' imprisonment for resisting and obstructing. We affirm Varner's convictions, but we remand his sentence for further proceedings under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. FACTUAL BACKGROUND

On June 17, 2014, Baroda Lake Township Police Officer John Hopkins pulled over a car that had an improper temporary license plate. Officer Hopkins testified that Varner, the back-seat passenger, was acting nervous and disruptive as Officer Hopkins attempted to question the driver, Daryl McGee, about his destination. According to Officer Hopkins, McGee stated that Varner was paying him to drive Varner from East Chicago, Indiana, to Paw Paw, Michigan. McGee consented for Officer Hopkins to search the vehicle.

According to Officer Hopkins, his standard procedure was to have passengers leave a vehicle before he searched it, and he also commonly conducted at least a brief pat-down of the passengers' waist lines for his safety while searching. However, when Varner left the car, Officer Hopkins noticed a bulge near Varner's beltline. From experience, Officer Hopkins knew that people commonly carry weapons in the front of their pants. Officer Hopkins decided to conduct a full pat-down of Varner.

Officer Hopkins explained that he initially asked Varner to face the vehicle so that he could determine whether Varner was carrying a weapon in the back of his pants and to be in

-1-

control of the situation if Varner tried to reach into the front of his pants. After finding no other weapons, Officer Hopkins asked Varner to turn around. The dashboard camera video showed that Officer Hopkins immediately reached for the front of Varner's pants. When Officer Hopkins attempted to determine what the bulge was, Varner shoved Officer Hopkins away and attempted to flee. After apprehending Varner, Officer Hopkins discovered that the bulge was a Crown Royal bag containing 31 individually wrapped crack-cocaine rocks and 13.9 grams of powder cocaine inside. The bag's string was attached to Varner's pants and was difficult to remove.

## II. SUPPRESSION

Varner contends that the trial court should have suppressed the cocaine evidence because Officer Hopkins's pat-down violated his right to be free from unreasonable searches and seizures. Varner disputes that Officer Hopkins actually saw a bulge in Varner's pants and contends that the trial court clearly erred by finding that reasonable suspicion supported Officer Hopkins's decision to pat Varner down. We conclude that the trial court's findings were not clearly erroneous and that it did not err by refusing to suppress the cocaine evidence.

This Court reviews the trial court's finding at a suppression hearing for clear error. *People v Chowdhury*, 285 Mich App 509, 514; 775 NW2d 845 (2009). The trial court has clearly erred if this Court is definitely and firmly convinced it made a mistake. *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). We give regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). We review de novo the trial court's ultimate determination that reasonable suspicion supported a pat-down. *Chowdhury*, 285 Mich App at 514.

Both the United States Constitution and the Michigan Constitution guarantee the right to be free from unreasonable searches and seizures. *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). To comply with this requirement, police officers generally must have a warrant to conduct a search. See *id*. If police officers obtain evidence while violating the Fourth Amendment, the evidence is generally inadmissible in criminal proceedings. *Id*. at 418; *Mapp v Ohio*, 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

However, "[a]n officer who makes a valid investigatory stop may perform a limited patdown search for weapons if the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer." *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). A reasonable suspicion is more than a hunch but less than probable cause. *Id*. at 98. "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the search. *Terry v Ohio*, 392 US 1, 21; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

Ultimately, the resolution of this issue hinged on the trial court's credibility determination. Officer Hopkins testified that he was suspicious of Varner because he was behaving oddly for a back-seat passenger while Officer Hopkins was attempting to question McGee. The video evidence shows that Varner adjusted his shirt after stepping out of the vehicle and that, after patting down Varner's back, Officer Hopkins had Varner turn around and immediately reached for Varner's waist line. Contrary to Varner's assertions, there is no

indication that this video was altered. Officer Hopkins explained the circumstances, and his explanations included his reasons why he initially patted down Varner's back instead of his front, and the minor inconsistencies in Officer Hopkins's testimonies do not render his testimony patently incredible. See *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998) (stating that conflicting witness testimony creates an issue of credibility, which is for the trier of fact to determine). After reviewing the evidence, the trial court decided to believe Officer Hopkins's statement that he saw a bulge in the front of Varner's pants. That Officer Hopkins testified that he routinely pats down occupants before searching a vehicle does not negate that he had a reasonable, particularized suspicion in this case.

We are not definitely and firmly convinced that the trial court made a mistake when it chose to believe Officer Hopkins's testimony that he saw a bulge in Varner's pants. Because the search was legal, Varner's contention that he had a right to resist an illegal search is without merit. See *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012).[1]

## III. SENTENCING

When sentencing, the trial court must consult the sentencing guidelines and assess the highest amount of possible points for all offense variables. *Lockridge*, 498 Mich at 392 n 28. This Court reviews the sentencing court's scoring of a sentencing guidelines variable for clear error, and a preponderance of the evidence must support the trial court's determinations. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The proper interpretation and application of the sentencing guidelines is a question of law that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

First, Varner contends that the trial court improperly assessed 75 points under prior record variable (PRV) 1. We disagree.

The trial court must assess 75 points for PRV 1 if the offender has three or more prior high severity felony convictions. MCL 777.51. MCL 777.50(a) bars the scoring of a prior offense if there is a gap of 10 or more years "between the discharge date from a conviction . . . and the defendant's commission of the next offense resulting in a conviction." The passage of time bars the trial court from considering a prior conviction if, "starting with the present offense, there was ever a gap of 10 or more years between a discharge date and a subsequent commission date that would cut off the remainder of his prior convictions . . . ." *People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009). A defendant's discharge date is "the date an individual is discharged from the jurisdiction of the court or the department of corrections after being convicted of . . . a crime . . . ." MCL 777.50(4)(b).

On December 18, 1990, an Indiana court convicted Varner of criminal confinement, rape, and criminal deviate conduct. The Indiana court sentenced Varner to serve 20 years' imprisonment for his rape and criminal deviate conduct convictions and 6 years' imprisonment

---

[1] Additionally, we note that in his reply brief, Varner expressly abandoned his claim that the trial court violated his due process rights by empaneling an anonymous jury.

for his criminal confinement conviction. Varner's contention that he fully served his sentence in 1996 is not relevant. While Varner fully served his criminal confinement sentence at that time, he was still incarcerated for his rape and deviate conduct convictions until March 28, 2010, at which point the Indiana Department of Corrections discharged him. Varner committed the present offense in 2014. Accordingly, because not more than 10 years had passed from when the Indiana Department of Corrections discharged Varner, the trial court did not err by assessing 75 points under PRV 1.

Second, Varner contends that the trial court improperly assessed 50 points under offense variable (OV) 15 because a preponderance of the evidence did not establish that defendant traveled from Indiana to Michigan while possessing the cocaine. We disagree.

The trial court properly assesses 50 points under OV 15 when

> [t]he offense involved traveling from another state or country to this state while in possession of any mixture containing a controlled substance . . . with the intent to deliver that mixture in this state. [MCL 777.45(1)(d).]

Circumstantial evidence is equally as competent as direct evidence. *Zolton v Rotter*, 321 Mich 1, 8; 32 NW2d 30 (1948). The presence of conflicting testimony creates a question of fact for the trier of fact to resolve. *Lemmon*, 456 Mich at 647.

In this case, Officer Hopkins testified that McGee told him that he had driven Varner from East Chicago, Indiana, into Michigan. According to Officer Hopkins, McGee told him that he filled the car up with gas in East Chicago, and McGee did not mention making any other stops. Varner testified that he and McGee made a stop in Michigan where he picked up the cocaine. However, Officer Hopkins also testified that from his experience as an officer, the manner in which defendant had the drugs packaged was time consuming, and it is much easier to obtain controlled substances from a defendant's normal contact person in his or her hometown before going on a trip. Additionally, there were no packaging materials in the car, and the bag was physically attached to Varner's pants.

Given the circumstantial evidence, we are not definitely and firmly convinced that the trial court made a mistake by finding that Varner transported the drugs to Michigan from Indiana. We conclude that the trial court properly assessed 50 points under OV 15.

Third, Varner contends that remand is necessary under *Lockridge* because his sentence involved judicially found facts. We agree.

The Sixth Amendment does not permit judicial fact-finding to increase a defendant's sentencing floor in cases of mandatory minimum sentencing. *Lockridge*, 498 Mich at 388-389. In this case, a jury did not determine whether Varner crossed into the state of Michigan while possessing the cocaine. This judicially found fact altered Varner's sentencing range because, had the trial court not scored OV 15 at 50 points, defendant's guidelines then would have been 19 to 76 months' imprisonment. MCL 777.65; MCL 777.21(3)(c). This is substantially less than

the 38 to 152 months' imprisonment that the guidelines recommended when considering OV 15. We conclude that Varner has made the threshold showing of plain error under *Lockridge* and that he is therefore entitled to procedures under *United States v Crosby*, 397 F3d 103 (CA 2, 2005).[2]

We affirm Varner's convictions, but we remand for the trial court to determine whether it would have imposed a materially difference sentence under the sentencing procedure described in *Lockridge*.  We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray

---

[2] If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence.  If it determines that it would not have imposed the same sentence, it may resentence Varner. *Lockridge*, 498 Mich at 399.